C. O. TRASK v. LIVINGSTON COUNTY, Appellant.

Division Two, March 31, 1908.

1. **COUNTY: Indebtedness.** The Constitution permits the county court to anticipate the current revenues to the extent of the county's income for the year in which a debt is contracted or created, but prohibits the anticipation of the revenues for any future year. A bridge contracted for in September is to be paid for out of the revenue of the year in which the contract is made, if the appropriation therefor is not in excess of such revenues, and cannot be paid for out of the revenues for the next year, even though completed and accepted the next year.

2. ——————: ——————: **Date: Bridges.** The Constitution in declaring that "no county shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year," and the statutes in forbidding the doing of anything "towards building the bridge after the letting thereof, until an appropriation for the same shall first be made by the county court," mean that the county becomes indebted for the bridge when the contract therefor is made, and that the appropriation to pay for the same must be made out of the revenue for that year and do not mean that the bridge can be paid for by an appropriation out of the revenue for the next year, even though the bridge is finished the next year. The date of the county's indebtedness, under the Bridge Act, if valid at all, is the year in which the contract is made, and not the next year when the bridge is completed and accepted and warrants issued to pay for it. [Distinguishing Saleno v. Neosho, 127 Mo. 639; Lamar Water & E. L. Co. v. Lamar, 128 Mo. 188; and Water & Light Co. v. Lamar, 140 Mo. 156.]

3. ——————: ——————: **Appropriations.** The county court is not authorized to appropriate revenues which were to be derived from taxation for the next year when such taxes have never been assessed, levied or collected.

4. ——————: ——————: ——————: **Bridges.** The statute requires the county court to make an appropriation for a bridge out of the revenues before the Road and Bridge Commissioner lets the contract therefor, and to make such appropriation out of the revenues for that year, and if that appropriation is not in excess of the revenues for that year, the court may the next year, when the bridge is completed and accepted, issue warrants against the revenues of the year in which the appropriation was made, and be compelled to pay them.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*John H. Taylor* and *F. Sheetz & Sons* for appellant.

The income and revenue for the year 1890 was exhausted by the payment of warrants issued prior to those in suit, and prior to the issuance of the warrants sued on defendant had become indebted in excess of

its income and revenues for said year of 1890, and said warrants are void. Const., sec. 12, art. 10; Saleno v. Neosho, 127 Mo. 639; Lamar v. City of Lamar, 128 Mo. 188; Water Company v. City of Neosho, 136 Mo. 511; Water Company v. City of Lamar, 140 Mo. 156; Bank v. Douglass County, 146 Mo. 56; East St. Louis v. East St. Louis, 98 Ill. 415; Dively v. Cedar Falls, 27 Iowa 227; City of Valparaiso v. Gardner, 97 Ind. 1; Weston v. City of Syracuse, 17 N. Y. 110; Rome v. McWilliams, 67 Ga. 118; Smith v. Dedham, 144 Mass. 177. The county did not become indebted on the bridge contract of 1889 until the bridges were completed and accepted. Lum v. Steamboat Buckeye, 24 Miss. 565; Trowbridge v. Sickler, 42 Wis. 417; Chicago v. Galpin, 183 Ill. 408; Saleno v. Neosho, 127 Mo. 639.

*Tatlow & Mitchell* for respondent.

(1) Livingston county became indebted to the Clinton Bridge and Iron Company in September, 1889, at the time the written contract was executed pursuant to the previous order of the county court accepting its bid and ordering the Road and Bridge Commissioner to enter into such contract with it on behalf of the county. The constitutional provision relied upon by defendant, providing that "no county . . . shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year," article 10, section 12, by its express terms settles this question. It fixes each year as a unit of time, which corresponds with the well-known fact that taxes in this, and all other states, are levied and collected annually. This provision, by necessary implication, permits the anticipation of the current revenues to the extent of the year's income in which the debt is contracted or created, and by its express terms prohibits the anticipation of the revenues of any future year. Any other construction renders the constitutional provision mean-

ingless.  Gray's Lim. of Tax. Power and Pub. Indebt-
edness, secs. 2072, 2077, 2162.  (2)  Unless the statute
is complied with there is no liability, express or
implied, on the part of the county to pay for the bridge
or building.  Heidelberg v. St. Francois Co., 100 Mo.
69; Anderson v. Ripley Co., 180 Mo. 46; Walcott v.
Lawrence Co., 26 Mo. 272; Phillips v. Butler Co., 187
Mo. 713; City of Unionville v. Martin, 95 Mo. App. 36;
Dougherty v. Excelsior Springs, 110 Mo. App. 626.
The above cases  establish beyond controversy that the
mere acceptance of the bridges by the county court,
and the use thereof by the public, did not create an in-
debtedness against the county, and the case relied up-
on by the defendant county, as well as the above cases,
expressly hold that the mere issuance of the warrants
did not create the indebtedness.  Bank v. Douglas Co.,
146 Mo. 42.  The indebtedness was created, if at all, by
compliance with the Bridge Act, that is, by letting and
making the contract as therein provided.  Of course,
the county would not be required to pay for the bridges
unless they were constructed in accordance with the
contract.  The debt existed at the time the contract
was made, but did not mature or become payable until
the contract was performed by the Bridge Company.
(3)  The question as to when the county became in-
debted by reason of such transaction is to be deter-
mined by the "income and revenue provided for such
year," which is to be looked to for the payment of
such indebtedness.  This, under the plain terms of the
Constitution, the bridge chapter and all of the author-
ities, was the "income and revenue provided for the
year" 1889, and not the "income and revenue provided
for the year" 1890 that had neither been assessed,
levied nor collected.  In other words, the contract was
necessarily made with reference to the "income and
revenue" of a particular year, and could not be so
made as to be ambulatory in its nature and applicable

to the year in which the bridge might happen to be completed, whether in 1889 or 1890. State ex rel. v. Allison, 155 Mo. 343; Gray's Lim. of Tax Power and Pub. Indebt., sec. 2076; 2 Smith's Ed. Beach's Modern Law on Mun. Corp., sec. 902. (4) Contracts for the annual supply of water, gas and light are the exceptions to the general rule, and are no authority for anticipating the future revenues of a city or county for years other than the one in which the contract is made for the purpose of erecting bridges, buildings, water, gas or electric works, or for constructing streets, roads or other permanent improvements. The authorities are quite as uniform in announcing this doctrine as they are in upholding contracts for the annual supply of water, etc. Culbertson v. City of Fulton, 127 Ill. 30; City of La Porte v. Gamewell, 146 Ind. 466; Earles v. Wells, 94 Wis. 285; Hall v. Cedar Rapids, 115 Iowa 199; Reynolds v. City of Waterville, 92 Me. 292; Spillman v. City of Parkersburg, 35 W. Va. 605; Baltimore, etc. v. People, 200 Ill. 541; Putman v. Grand Rapids, 58 Mich. 416; Grant v. City of Davenport, 36 Iowa 396; Gray's Lim. of Tax. Power and Pub. Indebtedness, sec. 2083. (5) "The commissioners shall do nothing towards building the bridge, or letting thereof, until an appropriation for the same shall first be made by the county court." Sec. 5188, R. S. 1899; 2 Am. and Eng. Ency. Law (2 Ed.), 515; Clayton v. Berry, 27 Ark. 131; Woodward v. Reynolds, 58 Conn. 490; State v. Bordelon, 6 La. Ann. 68. (6) The county should not go in debt for the purpose of erecting bridges. It is absolutely beyond all doubt that under the provision of the Constitution no county shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, and under the statute expressly requiring an appropriation to build bridges, that the appropriation must be made

out of the money then actually in the treasury, or to come into the treasury during the year in which the contract was made from taxes then assessed and levied, or to be levied and collected during the year in which the contract was made. Gray's Lim. of Tax. Power and Pub. Indebt., secs. 2076, 2076a, 2077 and 2078; La Porte v. Gamewell, 146 Ind. 446; City of Springfield v. Edwards, 84 Ill. 626; Stone v. Chicago, 207 Ill. 492; 2 Smith's Beach's Modern Law on Mun. Corporations, sec. 902; State ex rel. v. Johnson, 162 Mo. 621.    (7) The record is silent as to when the bridges were actually completed and opened to the public. In the absence of any such showing, the presumption is that the Bridge Company kept and performed its engagement and completed the bridges in the year 1889, and had them ready for use by the public on the first day of January, 1890. Lenox v. Harrison, 88 Mo. 496; State ex rel. v. Bank, 120 Mo. 169; Agan v. Shannon, 103 Mo. 661; McAllister v. Ross, 155 Mo. 87; State to use v. Crumb, 157 Mo. 545.    (8) The indebtedness for the construction of the bridges having been created in 1889, the warrants therefor, although issued in 1890, cannot be counted for the purpose of swelling the indebtedness of the county for the year 1890, so as to render the warrants sued upon by the appellee invalid. Wilson v. Knox County, 132 Mo. 398.

GANTT, J.—This is an action by the plaintiff as the assignee of seventeen warrants issued by the county court of Livingston county to the original holders thereof for materials furnished and work and labor done for said county in the year 1890.

The petition counts separately upon each warrant and its assignment to plaintiff, its presentation to the county treasurer, and its dishonor and protest, and judgment is prayed for the aggregate of all of said warrants with interest.

The answer pleads that the said several warrants were issued in excess of the revenues of said county for the year 1890 and also invokes the five-year Statute of Limitations. The reply was a general denial. The venue was changed to Linn county. A jury was waived and the cause tried to the court, and resulted in a judgment for plaintiff for $2,407.75, at the December term, 1904. The facts developed on the trial were as follows:

Plaintiff offered and read in evidence warrants one to sixteen inclusive which correspond with the several counts of the petition based thereon, and as no point is made on them, by agreement of counsel they were omitted from the bill of exceptions. Plaintiff then read in evidence the following stipulation:

"In the Linn Circuit Court, October term, 1904.

"C. O. Trask vs. Livingston County.

"For the purpose of saving costs, the parties in the above-entitled suit agree that the total income and revenue provided for the year 1890 for the said Livingston county, Missouri, amounted to the sum of $21,283.66.

"SECOND. That the following is a complete and correct copy of the register of warrants for the year 1890 in Livingston county, Missouri, and as contained in the county clerk's warrant register No. 2 beginning at warrant No. 4963, issued on January 6th, 1890, and ending with warrant No. 5988, issued on December 30th, 1890, which are not copied herein but amount to total issue of $26,782.86.

"THIRD. That the signatures to the warrants sued on, to-wit, the signatures of the county clerk and the presiding judge of the county court of said county, are genuine, as well as the signatures of the county treasurer, showing the respective dates of presentment and protest of said warrants; and also the signatures of

the respective assignments thereon are likewise genuine.

"FOURTH. It is agreed that any additional proof may be offered by either side as to these facts or any other facts material in this case."

Plaintiff then offered and read in evidence exhibit "B" consisting of copies of eleven warrants with their endorsements, Nos. 5379 to 5390 inclusive, all payable out of money in the treasury appropriated for Bridge Fund and each for $500, except the last, which is for $197. As no point is made as to their form it is unnecessary to set them out at length. All of which eleven warrants were payable to the Clinton Bridge and Iron Company, each for $500, except No. 5390, which was for $197, all protested May 20th, 1890, all of which were assigned to the Clinton National Bank and by it assigned to W. F. Carter, Jr., and upon which an action was brought in the circuit court of Livingston county and then pending, to the introduction of which defendant duly objected as irrelevant and not the best evidence.

Plaintiff then offered the report of the Road and Bridge Commissioner of the bids for building a county bridge over Grand River between Chillicothe and Utica, showing the bid of the Clinton Bridge and Iron Company to be $4,874 and the lowest bid thereof, and of H. Hedges of the same company for the bridge over Shoal Creek for $820 to be the lowest bid, which were approved by the county court and contracts ordered to be let and an appropriation made for each on the 5th day of September, 1889, at the August adjourned term of said county court.

Contracts were entered into in writing by said Bridge Company and the Road and Bridge Commissioner of said county on September 7th, 1889, whereby said bridge company agreed to complete said bridges on or before January 1st, 1890, and maintain the same

for four years from and after their completion, for which the county agreed to pay said sums of $4,874 and $820 in county warrants to be drawn at the first meeting of the county court after the completion and acceptance of said bridges. The bridge company also entered into a bond for its faithful performance of said contracts. Afterwards on May 19th, 1890, said bridges were accepted and on May 20th, 1890, warrants were ordered issued and were issued therefor.

At the conclusion of all the evidence defendant prayed the court to declare the law to be that under the pleadings and the evidence the finding must be for defendant, which was refused and defendant excepted. Thereupon the court found all the issues for plaintiff on each of said counts, and rendered judgment in the aggregate for $2,407.75, to bear interest at six per cent from its rendition. On the same day defendant filed its motions for a new trial and in arrest which were heard and overruled and defendant excepted.

I. From the foregoing statement, it becomes apparent that there is one single issue on this appeal and that is, were the warrants sued on issued in excess of the income and revenues of Livingston county for the year 1890? Or, stated in a different form, did said county become indebted on September 7th, 1889, the date of the bridge contract, to the amount of $5,694, or on May 20th, 1890, when it issued its twelve warrants to the Clinton Bridge and Iron Company? It is conceded and agreed that the total income and revenue of said county for the year 1890, was $21,283.66, and the warrants issued that year amounted to $26,782.86, and this last sum included the twelve bridge warrants aggregating $5,694. If the $5,694 is to be deducted from the total amount of warrants, $26,782.86, issued by the county in 1890, then the warrants chargeable against the income and revenue for that year amounted

to $21,088.86, a sum less than the total income and revenue, to-wit, $21,283.66, and they are a valid indebtedness. On the other hand if these bridge warrants to the amount of $5,694 are not to be subtracted, then the warrants for 1890 exceeded the total income and revenue for 1890, and as the warrants sued on were among the last issued that year, they were in excess of the income and revenue and plaintiff is not entitled to recover. The simple question then is, when did Livingston county become indebted to the Clinton Bridge Company? In September, 1889, when the county court accepted its bid and directed the bridge and road commissioner to enter into the contract for the construction of said bridges and he entered into said contract, or not until it accepted said bridges and drew its warrants therefor May 20th, 1890? If in September, 1889, that indebtedness was not for 1890, and is not to be charged against the revenue provided for 1890, and plaintiff's warrants issued for indebtedness created in 1890 and within the revenue provided for that year are valid. The circuit court held that the bridge contract was an indebtedness incurred in 1889 and not in 1890, and that plaintiff's warrants were issued for indebtedness incurred for current expenses in 1890 and were issued within the revenue provided for the year 1890 and plaintiff was entitled to recover.

By section 12 of article 10 of the Constitution of Missouri (1875), it is ordained: "No county . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year. . . ." Counsel for the county insist that the county did not become indebted to the bridge company until the bridges were accepted and the county court issued the warrants therefor on May 20, 1890, and in support of their position rely upon the decisions of this court in Saleno v. Neosho, 127 Mo. l. c. 639; Lamar Water

& E. L. Co. v. City of Lamar, 128 Mo. 188; Water Company v. Neosho, 136 Mo. l. c. 511; Water & Light Co. v. City of Lamar, 140 Mo. l. c. 156, and Bank v. Douglas County, 146 Mo. l. c. 56.

On the other hand, counsel for plaintiff distinguish those cases and insist the indebtedness accrued when the court accepted the bridge company's bid, made the appropriation, and the Road and Bridge Commissioner under the order of the court made and entered into the contract to pay the amount bid when the bridge should be completed according to the contract, which required the bridge to be completed on or before January 1, 1890. It may as well be stated here and now that the county did not show that the bridges were not completed according to the contract in the year 1889, though it did show they were not formally accepted until May, 1890, and the warrants issued then.

The constitutional provision found in section 12 of article 10 of that instrument has often been construed by this court. In Book v. Earl, 87 Mo. l. c. 252, it was well said: "The evident purpose of the framers of the Constitution and the people who adopted it was to abolish, in the administration of county and municipal government, the *credit system* and establish the *cash* system by limiting the amount of tax which might be imposed by a county for county purposes, and limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury for that year. Section 12, supra, is clear and explicit on this point. Under this section the county court might anticipate the revenue collected, and to be collected, for any given year, and contract debts for ordinary current expenses, which would be binding on the county to the extent of the revenue provided for that year, but not in excess of it."

For a proper determination of whether the county

became indebted for the bridges to the Clinton Bridge
and Iron Company in 1889 or in 1890, the law of
this State in regard to building and providing bridges
where the estimated expense exceeds fifty dollars, must
be kept in view and considered. Section 5183, Revised
Statutes 1899, requires all such bridges to be built by
the county. By section 5185, the county court must
determine in what manner and of what materials the
bridge shall be built and the probable cost thereof and
require the road commissioner to proceed to the spot
where the bridge is to be built and make an accurate
estimate of the cost of the building of the same, accord-
ing to any plan or plans ordered by the court, or such
as in the commissioner's opinion may be best and with-
out delay make report thereof to the court, and order
the commissioner to let the contract for building and
keeping the same in repair for not less than two nor
more than four years, to be determined by the court.
The commissioner is required to advertise the time
and place of letting the bridge not less than twenty
days prior to letting the contract. The commissioner
at public outcry or by sealed bids lets to the lowest
bidder subject to the approval or rejection of the coun-
ty court. "If such letting be approved by the court,
it shall make an appropriation for building such bridge,
and order the commissioner to contract therefor at
the price let, who, in contracting, shall take bond, pay-
able to the county, with two good and sufficient sure-
ties, . . . sufficient to cover all damages that may
accrue from the breach of the contract." By section
5188, the commissioner is forbidden to do anything
"toward building the bridge after the letting thereof,
*until an appropriation* for the same shall first be made
by the county court." Section 5190 forbids any county
court in this State to approve any contract for build-
ing or repairing any bridge not made in the manner
provided by said chapter 84, Revised Statutes 1899.

210 Sup—38

It will be observed the statute requires the county court to make an appropriation to pay for the bridge before it is let or built and expressly forbids the making of a bridge contract in any other manner than as provided by that chapter. It can be stated as the settled law in this State that, if the Bridge Company had without any public letting, written contract or appropriation built these bridges and completed them on May 19, 1890, and the county court had on May 20, 1890, issued warrants for what it conceived was the reasonable value thereof, such warrants would not have constituted a valid indebtedness of said county. [Heidelberg v. St. Francois Co., 100 Mo. 69; Anderson v. Ripley County, 181 Mo. 46; Wolcott v. Lawrence County, 26 Mo. 272; Phillips v. Butler County, 187 Mo. 698.]

In Mountain Grove Bank v. Douglas County, 146 Mo. 42, it was expressly held that the mere issuance of the warrants did not create an indebtedness. Hence, the indebtedness for these bridges was created, if at all, by a compliance with the law governing the letting and contracting for bridges already noted. When the county became indebted on these bridge contracts must be determined by the "income and revenue provided for such year," which under the Constitution must be looked to for the payment of such indebtedness and it was the "income and revenue provided" for the year 1889, which the county court was authorized to appropriate for that purpose, and not the revenue for the year 1890, which at the date of the contract for the building of said bridges had never been assessed, levied or collected. The language of the Constitution is, "No county . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year." It has been uniformly construed that this provision of the Constitution permits the anti-

cipation of the current revenues to the extent of the year's income in which the debt is contracted or created and prohibits the anticipation of the revenues of any future year. Any other construction would render section 12 of article 10 nugatory, for if the county court of Livingston county in September, 1889, could anticipate the revenue of 1890, it could also anticipate the revenues of 1891 and 1892, and would leave the power of the county with reference to indebtedness what it was before the Constitution of 1875 was adopted. In Gray's Limitation of Taxing Power and Public Indebtedness, section 2162, the author expresses the view that "the time when the debt actually comes into existence as a binding obligation on the municipality, is the time as to which all calculations as to its validity should be made."

But it is earnestly urged by counsel for the county, that the decisions of this court in Saleno v. Neosho, 127 Mo. 639, and the subsequent cases of Lamar Water & E. L. Co. v. Lamar, 128 Mo. 188, and Water & Light Co. v. Lamar, 140 Mo. 156, settled this question by holding that the indebtedness of the county was not created until the bridges were completed. In Saleno v. Neosho, supra, and the kindred cases following it, the question was whether a contract by which the city agreed to pay the Water Company for the use of water for the city and other purposes $2,000 per year for a term of twenty years, was a creation of a debt *in the aggregate* for $40,000, or was an obligation to pay $2,000 a year if the water was supplied according to contract. And it was ruled that it was not the creation of an indebtedness for the aggregate of the installments to be paid under the contract, this court saying: "A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition pre-

cedent, which may never be performed, and which cannot ripen into a debt until performed. Here the hydrant rental .depended upon the water supply to be ·furnished to the defendant, and if not furnished no payment could be required of it.'' In Lamar Water & E. L. Co. v. Lamar, 128 Mo. l. c. 222, this court quoted with approval from Judge Dillon in his work on Municipal Corporations, as follows: ''Under the constitutional provisions in Iowa, Illinois, Indiana and Pennsylvania, referred to, it is held that a corporation may make a contract (at least, for necessaries) covering a series of years, upon which an obligation to pay may arise from year to year as the thing contracted for is furnished, and in such case, the whole amount which may ultimately become due does not constitute a debt within the constitutional prohibition. But in order to ascertain whether the corporation by such contract is transgressing the limit, regard is had only to the amount which may fall due within a certain year or other period; and if the revenues for that year or other period are sufficient, over and above the payment of the other expenses, to pay such amount, there is no debt incurred within the constitutional prohibition.'' [1 Dillon's Municipal Corporations (4 Ed.), sec. 136a.] In that case it was further said: ''The term 'indebtedness' is a wide one, and must be construed in every case in accord with its context. It has been very recently considered, in its application to the subject in hand, by the Court In Banc, and the conclusion was announced that such an obligation to pay an agreed sum, year by year, for the furnishing of certain necessary supplies during a term of twenty years, was not an *immediate* indebtedness *for the entire amount* that might ultimately become due by installments during that term.'' [Saleno v. Neosho, 127 Mo. 627.] It will, we think, be seen upon close examination of Saleno v. Neosho and the Lamar cases that

the great question was whether there was an *aggregate* indebtedness created in the beginning which would exceed the debt-making power of the corporation or whether the indebtedness should be treated only as an obligation which would arise from year to year as the water contracted for was furnished, and in order to ascertain whether the municipal corporation was transgressing the constitutional limit regard was had only to the amount which might fall due within a certain year and if the revenue for that year was sufficient over and above the payment of other expenses, then there was no debt incurred within the constitutional prohibition. In other words it was practically decided that although the contract was for twenty years it was considered by the court from the debt-creating point of view as if it had been twenty separate contracts, one covering each year. And the authorities all agree that if the amount to be paid in any year under such a contract exceeds the income and revenues for such year against which it is a charge, it would be invalid, at least to the extent of such excess. There are many considerations which in our opinion sustain the decisions in those cases, but they afford no authority for holding that the county court in this State under the Bridge Act can contract for a supply of bridges covering a period of years, one bridge to be built each designated year and to be paid for out of the revenue for the year in which it shall be built. All the provisions of the Bridge Act are inconsistent with any such power in the county court.

We think that the indebtedness for these bridges was incurred, if at all, by the letting and making of the contract therefor in September, 1889.

In Culbertson v. City of Fulton, 127 Ill. 30, the Supreme Court had this question before it. The city on August 15, 1887, entered into a contract for the construction of a system of waterworks for the city,

and the plant was completed in February, 1888. If the indebtedness was created on the date of the contract then the assessment for the year 1886 was to govern; if created in February, 1888, at the time the plant was completed and ready for acceptance, then the assessment of 1887 governed. The question was when was the debt incurred? And the court held that by entering into the contract on August 15, 1887, the city became indebted within the meaning of the Constitution of Illinois, which on this subject is almost in the exact words of our Constitution, the court saying: "It cannot be said that the indebtedness did not come into being until the work was completed and accepted by the city. The city bound itself to pay for the work when it should be completed, and could be compelled to do so, if the work should be done according to the contract. . . . A debt payable in the future is obviously no less a debt than if payable presently." In City of Laporte v. Telegraph Co., 146 Ind. 466, it was held that a contract by a, city for a fire-alarm system at a time when the city was indebted more than two per cent on the assessed valuation of its taxable property, was void under the provision of article 13 of the Constitution of that State limiting municipal indebtedness to two per cent of the value of the taxable property, where such city had no money in the treasury to pay for such system either at the time the contract was made or when the same was completed and accepted, although there were sufficient funds on hand to pay for it at the time fixed by the contract for such payment. Said the court: "The controlling question in this case is, do the facts found show an indebtedness of appellant within the inhibition imposed by the foregoing article of the Constitution? A debt in its general sense is a specific sum of money which is due or owing from one person to another, and denotes not only an obligation of the debtor

to pay, but the right of the creditor to receive and enforce payment. [State ex rel. v. Hawes, 112 Ind. 323; Crowder v. Town of Sullivan, 128 Ind. 486.] It is the rule in this State that when a municipal corporation contracts for a usual and necessary thing, such as water or light, and agrees to pay for it annually or monthly, as furnished, the contract does not create an indebtedness for the aggregate sum of all of the installments, since the debt for each year or month does not come into existence until it is earned. The earning of each year's or month's compensation is essential to the existence of a debt. [Citing authorities.] If the city can pay this indebtedness when it comes into existence without exceeding the constitutional limit there is no indebtedness and therefore no violation of the Constitution. But if the indebtedness of the city already equals or exceeds the constitutional limit, and the current revenues are not sufficient to pay such indebtedness when it comes into existence, including other expenses for which the city is liable, an indebtedness is thereby created and there is a violation of the Constitution." It will be observed that the Indiana Supreme Court takes the same view of water and light contracts for which the city or county is to pay annually as the water or light is furnished, that this court took in the Neosho and Lamar cases, and yet, it held that the contract in that case for the fire-alarm telegraph constituted an indebtedness within the meaning of the Constitution and distinguished it from cases in which the debt is created in installments payable annually when the water or light is furnished.

But confining ourselves to the facts in evidence and the statute governing the building of bridges, as already said the statute required the county court to make an appropriation before the Road and Bridge Commissioner let the contract. The record shows that

the county court on the 5th of September, 1889, made an appropriation to pay for the building of the bridges. Now, out of what revenue was it authorized to make this appropriation, that of 1889 or that of 1890? We think the Constitution answers this question: they could only make it out of the revenue of 1889, and in this particular case this conclusion is reinforced by the fact that the bridges contracted for were to be completed in the year 1889, and as the obligation was incurred in 1889 and the bridges were to be built in that year and the appropriation was made in that year, we think there can be no escape from the conclusion that the indebtedness thereby created was a charge against the revenues provided for the year 1889, and not the revenues of 1890. Clearly the county court was not authorized to appropriate revenues which were to be derived from taxation in the year 1890, when such taxes had never been assessed, levied or collected. While the county court may in any one year draw warrants, after the revenue has been provided and the taxes levied within the scope of the levy and income for such year, it is too plain for argument that the Constitution forbids the anticipation of the revenues of any subsequent years; if not, all that has been said in regard to the force and effect of section 12 of article 10 of the Constitution to the effect that its purpose was to put counties upon a cash system instead of the old credit plan, has been in vain.

In our opinion, the bridge warrants offered and read in evidence were, if valid at all, chargeable against the revenues of said county for 1889, and we think should be deducted from the total amount of warrants issued in 1890, and this being so the plaintiff's warrants were a legal and valid charge for the current expenses of the said county for the year 1890 and the judgment of the circuit court awarding plaintiff judgment therefor was correct and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.