RICHARD BULL, Appellant, v. JAMES L. McQUIE, FRED S. HENDERSON, C. E. WILLIAMS and HERBERT D. CONDIE, Constituting the Board of Election Commissioners of St. Louis County, and LADUE-DEER CREEK SANITARY SEWER DISTRICT, a Municipal Corporation.—119 S. W. (2d) 204.

Court en Banc, July 13, 1938.

852

*Fred M. Switzer, Jr.,* for appellant.

*Fordyce, White, Mayne, Williams & Hartman, Walter R. Mayne* and *R. E. LaDriere* for Ladue-Deer Creek Sanitary Sewer District.

HAYS, C. J.—Richard Bull, plaintiff below, a resident, citizen and taxpayer of Ladue-Deer Creek Sanitary Sewer District No.

12043 in St. Louis County, on April 14, 1938, filed suit in the circuit court of said county to enjoin said sewer district and the individuals constituting the Board of Election Commissioners of that county from calling and holding an election at which there was to be submitted to the electorate a proposition to incur an additional indebtedness of $125,000 to be evidenced by bonds, for the purpose of completing the sanitary sewer system.

Demurrers general and special interposed by the defendants below (respondents here) to plaintiff's bill were sustained by the court. The plaintiff declined to plead further. Judgment went against him accordingly, and the case is here on appeal taken by him.

It is conceded that all steps necessary for the incorporation of the district were taken in accordance with the statutory requirements (Laws 1933-34, p. 119) pertaining to sewer districts in counties having a population of not less than 150,000, nor more than 400,000 inhabitants. Such is St. Louis County.

Application for the incorporation was filed in Division No. 3 of the Circuit Court of St. Louis County on August 15, 1936, and the preliminary hearing thereon was had on August 25, 1936, at which Mr. Horner, an engineer, was appointed to lay out and define the boundaries of the proposed district, and report. In due time he filed his report in which the boundaries of the district were laid out and defined, and in which it was stated "that the cost to complete the sanitary sewer system recommended by him would be approximately $445,000; that application had been made to the Public Works Administration for the United States Government for a grant, and that the balance of the necessary funds would be raised by bond issue of $275,000—an amount within the debt-incurring limitations of the State Constitution; that "the remaining sewers, the construction of which will be deferred until additional funds are made available (if no grant is obtained) are estimated to cost, under private contract without WPA regulations, $125,000. It appears from the rate of development and the building progress now going on in the area in the proposed district, that the assessed valuation will sufficiently increase so that by 1938 the additional funds required for the full construction could be voted at that time. The failure to obtain a grant therefore, would result in a deferred program with the work scheduled for full completion by 1939."

Upon the final hearing had on October 10, 1936, the court decreed the incorporation of said area as defined in the engineer's report and ordered the Board of Election Commissioners of St. Louis County to call an election within sixty days so that the voters residing in the district might vote (1) for three persons who should form the Board of Trustees of such district and (2) on the proposition to incur indebtedness by said district for the purpose of con-

structing a system of sanitary trunk line sewers within said district as shown by the amended report of said engineer appointed by the court, "in an amount not greater than the estimated cost of construction, to-wit, $275,000."

An election was held in conformity with the decree and with the Sewer District Act (Laws 1933-34, Extra Sess., p. 119), at which election three trustees were chosen and the proposition to incur indebtedness in the form and amount as set out in the paragraph next preceding this was carried; on February 10, 1937, bonds evidencing this indebtedness were issued and sold and the proceeds thereof have now been used or allocated for the purpose of constructing the contemplated sanitary sewer district.

The grant was not made by PWA. On April 6, 1938, the Board of Trustees considered the situation resulting from the failure to secure the grant, and considered also the advisability of holding an election at which additional indebtedness could be authorized and thereafter additional bonds issued pursuant thereto. They resolved to do so and accordingly expressed their purpose in a formal set of resolutions in which all steps hereinabove stated were set out in detail.

It was also noted therein (1) that it is estimated by the chief engineer of the district that an additional amount of $125,000 will be necessary to complete the sewer system as contemplated in the report of the engineer appointed by the court; (2) that it is unfair that certain residents of the sewer district will not be furnished sewage facilities and at the same time will be required to pay taxes the same as other residents who have been furnished such facilities; (3) that the assessed valuation of taxable property in said district as of June 1, 1935—the assessment of that date being the one governing the debt-incurring limitations of the district—is not less than $8,000,000—so that an additional amount of bonds in the sum of $125,000, when added to the present outstanding indebtedness of $275,000, will not in the aggregate exceed five per centum of said assessed valuation.

Pursuant to said resolutions so adopted there was, on April 6, 1938, filed a petition In the Matter of Ladue-Deer Creek Sanitary Sewer District, No. 12043, Division No. 3, Circuit Court of St. Louis County, for an order of court on the Board of Election Commissioners to call and to hold an election to appropriately submit a proposition to incur the additional indebtedness.

After hearing and consideration of said petition the court ordered the Board of Election Commissioners to call and hold an election in said sewer district at a time to be fixed by said board but within sixty days next following the issuance of the order and to hold the election in accordance with the Sewer District Act in question here, so that the legal voters residing in said district might vote

upon said proposition. The commissioners were duly notified of the order. Thereafter, on April 8, 1938, the trustees requested of them that the election be held sixty days after that date.

The suit now at bar was commenced shortly after. The election has not actually been called, owing to the fact that the parties have stipulated that the situation may remain *in statu quo* pending our decision in this case.

The question for decision is whether the proposed and threatened election is within the law.

The appellant contends that elections for sewer districts in St. Louis County are governed by the Sewer District Act, supra; that there is no other applicable provision in the law of Missouri, and that the act contains no express provision authorizing or requiring the calling or holding by the Board of Trustees, either themselves or through the election commissioners, of a second, or other than the first election, for the purpose of incurring additional indebtedness.

The express provisions of that act relative to elections to incur indebtedness by the district are contained in Sections 5, 6 and 7a (pp. 123-4).

Section 5 is as follows:

Sec. 5. "After the incorporation of the district . . . it shall be the duty of the court to order . . . the election commissioners . . . in said county, to call and hold an election . . . at which election the legal voters residing within the sewer district may vote for three persons who shall form the board of trustees. . . . In the order of such election the court shall also provide for submitting at such election a proposition to incur indebtedness by the district in *an amount not greater than the estimate of the cost of constructing a sewer system as provided in the report of the engineer.* [There follows a requirement for notice being given of time, place and purpose of the election and the amount of indebtedness to be incurred.] The election herein provided for shall be held and conducted and the returns thereof made, examined and cast up in the same manner and in all respects as in elections for state and county officers." (Italics ours.)

Section 6 provides for the form of ballot.

Section 7a provides that in the event the proposal fails of adoption, the matter may again be submitted to the voters of the district in the manner provided in Section 5.

It is manifest, as is contended by appellant, that there is nowhere in those provisions any provision requiring and authorizing the calling or holding of any other than the initial election, and, in the event that the proposition to incur indebtedness fails of adoption, another election at which the matter may again be submitted.

This Sewer District Act has been by this court interpreted and its constitutionality determined in State ex rel. Webster Groves Sanitary Sewer District v. Forrest Smith, 337 Mo. 855, 87 S. W. (2d) 147. The constitutional provision involved there, and the primary source of the power of such districts and other political subdivisions and corporations of the State, is Section 12 of Article X, which reads: "No county, city, town, township, school district and other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof voting on such proposition at an election to be held for that purpose, nor in cases requiring any such assent shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the assessment next before the last assessment for State and county purposes previous to incurring such indebtedness."

The appellant's contention is upon the statute and its proper interpretation in respect of power granted thereby. He contends that a municipal corporation or political subdivision possesses only such powers as are expressly granted by statute, or such as may be necessarily implied from power so expressly granted, citing State ex rel. Blue Springs v. McWilliams (en banc), 335 Mo. 816, 1. c. 820, 74 S. W. (2d) 363.

Upon that familiar rule, and subsidiary rules for statutory interpretation, he predicates the conclusion that, since this sewer district was organized for one specific and single purpose, it cannot —as may properly be said about cities and counties—be said to be one with broad and general powers and as such entitled to the benefit of liberal implications concerning them; and hence there is no reason for the necessary implication to be invoked that the district has power to incur additional indebtedness through an election subsequent to the initial one provided for by statute; that, therefore, the statute evinces that the general plan of the sewer project in its entirety should be determined by the court at the time of entering decree of incorporation, as thus the voters, when the question is submitted to vote, have before them a definite sewer plan— its boundaries, its estimated cost and how the money for same is to be raised, the probable tax rate necessary to pay the interest and acquire a sinking fund to discharge the debt, etc.—as a basis for their choice in the matter.

In that proceeding the court specifically found and specified all these elements as definitely and certainly as the engineer could and did report them. The court in conclusion found: "The construction in the contiguous area within the boundary lines hereinafter

858

set out, of a system of trunk line sanitary sewers at an estimate over all of $445,000 is necessary for the preservation of the public health and welfare, and will be of public utility and benefit and is advisable.'' Upon that specific finding and the other essential findings the court decreed the incorporation of the district, the calling and holding of an election for the selection of trustees and upon the proposition ''to incur indebtedness by said district for the purpose of constructing *a system of sanitary sewers within said district, as shown by the report of the engineer as amended, in an amount not greater than the estimated cost of construction of such system as shown by the said report as amended,* to-wit, $275,000. . . .'' (Italics ours.)

Taking up the subject of powers granted by legislative act. The applicable principles of interpretation are thus stated in State ex rel. Blue Springs v. McWilliams, cited hereinabove:

''It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied.'' [Followed by citations.]

It is self-evident that among those propositions the one designated as (3) is paramount to all the others. We submit that if the power of a body politic, such as is involved here, to incur indebtedness in the necessary accomplishment of the sole and only object of its creation and existence—an object esssential to the public health, convenience and welfare, as here—whether the power emanated solely from the legislative act as appellant erroneously contends, or whether it proceeds from the act and the section of the Constitution above set out as respondents correctly assert (State ex rel. Clark County v. Hackmann, 280 Mo. 686, 218 S. W. l. c. 324)—the essential power as regards this sewer project is the right of the district to incur bond indebtedness to the limit of the estimated cost of the entire sewer system completed as planned and laid out. The act clearly evinces this intent, and legislative intent is the polestar of statutory interpretation.

Certainly it was not the legislative intent to thwart reasonable and practical exercise of this all-important power. The mechanics of the election for which the statute provides are of secondary consideration, designed for the practical purpose of fairly ascertaining the collective will of the qualified voters of the district. Their office is not to obstruct but to aid. ''The letter killeth but the spirit giveth life.''

■ The initial election in question does not fall within the principle of law relied upon by appellant and involved in the cited Blue Springs case, supra, l. c. 820, viz., "That where the Legislature has authorized a municipality to exercise a power and prescribed the manner of its exercise, the right to exercise the power given in any other manner is necessarily denied." This rule finds no appropriate application here. It applies only when some *essential* step or action required by statute has not been taken. That was the situation in the Blue Springs case and the cases cited therein. In the Blue Springs case the municipality had incurred a bond debt without first submitting to an election the question of whether the debt should be incurred. The other cases deal with infirmities of a similar nature, so that no further comment needs be made concerning them.

Albeit, as contended by the appellant, the sewer corporation is not invested with broad and general powers, none the less, the power it does possess is plenary, co-extensive with the area of the district, inclusive of the planned sewer system in its entirety as an indivisible unit. In short, the corporation has all the "power essential and indispensable to the declared object and purpose of the corporation." The plenary power must of necessity abide until exhausted by the full exercise thereof. Hence, it inevitably follows that the threatened election for the submission of the proposal to incur an additional bond indebtedness of $125,000 is authorized by the Sewer District Statute.

With these views, we are of opinion the judgment should be affirmed. It is so ordered. All concur.