Honorable Ron Bockenkamp Missouri House of Representatives Room 116B, State Capitol Jefferson City, Missouri 65101
Dear Mr. Bockenkamp:
This is in answer to your opinion request of recent date in which you ask the following question:
 "Can an ambulance district organized under chapter 190 RSMo borrow money without issuing bonds or holding a special election as called for by Section 190.065 RSMo."
section 190.065, RSMo Supp. 1975, to which you refer in your opinion request, provides in part as follows:
 "1. For the purpose of purchasing any property or equipment necessary or incidental to the operation of an ambulance service, the board of directors may borrow money and issue bonds for the payment thereof in the manner provided herein. The question of the loan shall be decided at a special election ordered by the board of directors of the district and held at such time as the board of directors designates. Notice of the election, the amount and the purpose of the loan shall be given as provided in section 190.035.
 "2. The qualified voters at the election shall vote by ballot, which shall be in substantially the following form:
(Amount and purpose of loan)
For the loan 
Against the loan 
 A cross mark (X) in the square before the words `for the loan' shall be counted as a vote for the bonds, a cross mark (X) before the words `against the loan' shall be counted as a vote against the bonds.
 If two-thirds of the votes cast are for the loan, the board shall, subject to the restrictions of subsection 3, be vested with the power to borrow money in the name of the district, to the amount and for the purposes specified on the ballot, and issue the bonds of the district for the payment thereof."
Section 190.060, RSMo Supp. 1975, provides in part as follows:
 "1. An ambulance district shall have and exercise the following governmental powers, and all other powers incidental, necessary, convenient or desirable to carry out and effectuate the express powers:
* * *
 (5) To borrow money and to issue bonds, notes, certificates, or other evidences of indebtedness for the purpose of accomplishing any of its corporate purposes, subject to compliance with any condition or limitation set forth in sections 190.005 to 190.085
or otherwise provided by the Constitution of the state of Missouri;"
It is our view that the provisions of Section 190.065, requiring a vote by the people, are applicable only when an ambulance district desires to become indebted in an amount greater than the amount of revenue anticipated for the current year, plus unencumbered balances from previous years. It is our view that under the provisions of Section 26(a) of Article VI of the Constitution of Missouri the ambulance district is authorized to become indebted in an amount not "exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years." Section 26(a) of Article VI of the Missouri Constitution provides as follows:
 "No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution."
Ambulance districts under provisions of Section 190.010(2), RSMo Supp. 1975, are "political subdivisions of the state."
The Supreme Court of Missouri held that Section 26(a) of Article VI of the Constitution of Missouri is self-enforcing in the case of First National Bank of Stoutland v. Stoutland SchoolDistrict, 319 S.W.2d 570 (Mo. 1958). The court said l.c. 572-573:
 "In July 1949, Stoutland School District R2 of Laclede and Camden counties became a reorganized school district with its school building in Stoutland and Camden County designated as the county to which it belonged. V.A.M.S., Secs. 165.657 to 165.707. When the district started operations in September 1951, it, of course, had no working capital and insufficient funds with which to pay its current operating expenses. The district was dependent upon the receipt of its portion of taxes which were not collected and distributed to the district so as to correspond with its current expenses and obligations. At one point, for example, in 1953 there were no funds on hand and no assurance that salaries would be paid and the teachers refused to continue with their contracts and school was closed for two weeks. To meet the exigencies of this perpetual situation and, as one of the witnesses said, `to prevent the interruption of school,' the school board, each year, secured advances and borrowed money from the plaintiff bank and after its share of the revenue came in repaid the loans. 1953 was a typical year; by February there were no funds and the school board met for the purpose of authorizing its officers to enter into a loan arrangement with the bank. At this meeting, at which minutes were regularly kept, the board passed a resolution authorizing its officers to borrow $6,000 from the bank at 6% interest. On February 10th the cashier of the bank, after examining the minutes, deposited $6,000 in the district's account and subsequently the district issued checks against the account in payment of teachers' salaries, bus transportation and other usual school expenses. In similar circumstances on February 14th and again on April 18th the board borrowed and the bank advanced the further sums of $10,000 and $15,000, and thus in 1953 the district borrowed a total of $31,000. While, as has been said, the board frequently had no funds on hand with which to meet current expenses, the loans were always made in anticipation of its revenue and each calendar year in which the loans were made the district eventually received from tax sources more than enough revenue to repay the loans; for example, its ascertainable anticipated revenue for the calendar year 1953 was $120,426.74, the unencumbered anticipated sum on the date of the $6,000 loan being $99,839.42.
 "Admittedly, no constitutional or statutory provision expressly authorizes a school district to borrow money in this or any other manner. Nevertheless, Section 26(a) of Article 6, Const. Mo. 1945, is a self-enforcing grant of power to school districts to incur an indebtedness for public school purposes in an amount not `exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years * * *.' State ex rel. Gilpin v. Smith, 339 Mo. 194, 96 S.W.2d 40; State ex Inf. Dalton v. Metropolitan St. Louis Sewer Dist., 365 Mo. 1, 275 S.W.2d 225; Bull v. McQuie, 342 Mo. 851, 119 S.W.2d 204; State ex rel. Clark County v. Hackmann, 280 Mo. 686, 218 S.W. 318; Trask v. Livingston County, 210 Mo. 582, 109 S.W. 656, 37 L.R.A., N.S., 1045; Book v. Earl, 87 Mo. 246. A constitutional limitation on the extent, amount, or purpose of a school district's borrowing power is not a limitation on its authority to incur any indebtedness whatever (79 C.J.S. Schools, and School Districts § 325(b), p. 15), and, as of course, the payment of its debts and obligations, legally incurred, is a public school purpose. State ex rel. Gilpin v. Smith, supra; State ex rel. Clark County v. Hackmann, supra. . . ."
the power of an ambulance district to borrow money under provisions of Section 26(a) of Article VI of the Constitution is recognized by the provisions of Section 190.060.1(5).
CONCLUSION
It is, therefore, the opinion of this office that an ambulance district may borrow money and become indebted in an amount not in excess of the anticipated revenue for the current year plus any unencumbered balances from previous years without a vote by the people.
The foregoing opinion, which I hereby approve, was prepared by my assistant, C. B. Burns, Jr.
Very truly yours,
 JOHN ASHCROFT Attorney General