C. W. HIGHT, WALTER B. BENN, C. D. EIDSON, CHARLES BIRD, FLOYD E. McCORD, EDGAR R. IDOL, GEORGE W. JOHNSON and MISSOURI PUBLIC SERVICE COMPANY v. CITY OF HARRISONVILLE; LEE SPICER, Mayor; P. K. GLENN, DEL K. HALL, O. J. L. BROOKHART and S. M. WIRT, Members of Board of Aldermen; C. V. LYNCH, Clerk; J. L. WHITE, Treasurer; J. F. ATKINSON, V. J. WILLETT, H. S. VOLLE and L. A. JAMES, Members of Board of Public Works, and FAIRBANKS, MORSE & COMPANY, Appellants.—41 S. W. (2d) 155.

Court en Banc, July 29, 1931.

*Edward C. Crow, Allen B. Glenn* and *Bowersock, Fizzell & Rhodes* for appellant.

552

*C. W. Hight, J. S. Brierly, D. C. Chastain* and *Sparrow & Patterson* for respondents.

GANTT, J.—Plaintiffs seek to enjoin performance of a contract executed by Harrisonville, city of the fourth class, and Fairbanks, Morse & Co. The city undertook to purchase two engines and other equipment from the company for use in its light plant. It owned buildings for housing its light and water plant, and owned a distribution system including a "white way," which system had been

leased to and used by the Missouri Public Service Company, a corporation engaged in selling electric current to cities and consumers in cities, or to cities at wholesale for distribution. The Service Company paid the city $75 per month for use of the system and made practically no charge for current to light the streets. It was in Harrisonville under an expired franchise. On installation of the engines and equipment, the city would own an electric plant.

A contract to purchase the engines and equipment was executed by the parties on January 25, 1929, and the original petition was filed on February 1, 1929. On April 10, 1929, the city repealed the ordinance authorizing the execution of the contract, and by resolution accepted a written proposal of Fairbanks, Morse & Company "to furnish and deliver" engines and equipment to the city for use in its light plant. This proposal is the contract under consideration in this suit. On May 7, 1929, plaintiffs amended their petition to conform to the contract of April 10, 1929.

The original contract did not contain a schedule of 1928 electric rates fixed by the Missouri Public Service Company for Harrisonville consumers. The contract under consideration contains such a schedule, which is fixed as the maximum charge for current in the city. The original contract provided for payment from the net revenues of the water and light plants. The contract under consideration omitted payment from revenues of the water plant.

Plaintiffs as citizens and taxpayers of Harrisonville (a city of less than 3,000) sue for themselves and other citizens and taxpayers of the city wishing to join in the suit. They set forth in the petition the contract and ordinance authorizing its execution and allege that the contract creates an indebtedness in violation of Section 12, Article X, of the Constitution, and that the contract and ordinances are void for other reasons therein alleged.

The court granted a temporary restraining order. Defendants filed separate answers admitting that Harrisonville was a city of the fourth class; that defendants were officers of the city; that the parties executed the contract; and denied the other allegations of the petition.

Further answering, they alleged that plaintiffs were without authority to maintain the suit for the reason the contract would not result in pecuniary damage to them, since taxation would not be increased by reason of its performance; that the suit was brought prematurely; and that the contract is valid, legal and binding in all respects.

Thereafter defendants filed separate motions to dissolve the temporary injunction. The motions were taken with the case. On the hearing it was agreed that the assessed valuation of the taxable property of the city by "the assessment next before the last assessment for state and county purposes, previous to the incurring of

such indebtedness" was $1,290,519; that the bonded indebtedness of the city was $142,000; and that all the income and revenue of the city for the year 1929 was necessary to meet the current expenses of the city for that year. In other words, it was conceded that the city had reached the constitutional limit of indebtedness, and if the debt created by the contract was within the purview of Section 12, Article X, Constitution, the contract was void.

The court overruled the motions to dissolve the temporary injunction; found the issues for plaintiffs; held the contract constituted an indebtedness in violation of Section 12, Article X, of the Constitution; that it was invalid under certain statutes; that it was void for uncertainty and made the restraining order permanent. Defendants appealed.

Essential provisions of the contract follow:

"Prices

"The Company proposes to furnish said machinery and materials specified herein for the sum of sixty-two thousand, one hundred and fifty dollars, plus ninety-four hundred, seventy-nine and 40/100 dollars, being interest at 6 per cent per annum, making a total sum of seventy-one thousand, six hundred and twenty-nine and 40/100 dollars ($71,629.40), to be paid at the Company's office at Kansas City, Mo., as follows:

"Terms

"$1,193.82 payable 30 days after completion of erection, and $1,193.82 each thirty-day period thereafter until sixty monthly payments have been made. The Municipality shall have the privilege of paying any or all payments before due, in which case the company shall rebate interest at the rate of 6 per cent per annum from the date of such payments to the dates of maturity.

"All deferred payments are to be evidenced by pledge orders of the Municipality payable to the order of the Company, dated and delivered as of the date of completion of installation.

"All obligations arising under this agreement shall be secured by title retaining contract.

"All obligations arising under the terms of this contract are not general obligations of the City of Harrisonville. Mo.. but only special obligations payable from the net revenues of the electric light plant of the City of Harrisonville, Mo. 'Net revenues' shall be deemed to represent the balance of the gross receipts of the Municipality's electric light plant after the payment solely of the legitimate and necessary expenses of the operation of said plant. The Municipality covenants to operate said plant in an efficient and economic manner, and to maintain rates for the product or service of said plant, which will produce sufficient revenue to provide for the payments called for by this contract so far as it may be permitted to do so by law.

Rates, however, to be reasonable and not in excess of those in effect during 1928, a schedule of which is attached.

"The Municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or service of said plant shall be deposited and to credit such fund at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes.

"The Municipality agrees to operate said plant as a municipal plant until all obligations due under this contract have been fully discharged, and until such time shall not dispose of said plant in any manner so as to deprive the Company of its title to or interest in said machinery or materials without providing for the payment to the Company of all amounts then unpaid under this contract.

"Municipality agrees not to delay erection beyond 90 days from date of shipment, otherwise payments contingent upon erection and test become due, in accordance with terms of the contract.

"This proposal is made upon the following conditions:

"Title

"That the title and ownership of the machinery or materials herein specified shall remain in the Company until final payment therefor has been made in full as above provided, and until final payment has been made of any other sums that may be due the Company by the Municipality, and in the event that pledge orders are taken at any time representing deferred payments or any sum that may be due, or in the event that any judgment is taken on account of all or any part of the said sums, the title to the machinery or materials shall not pass until such pledge orders so given or extensions thereof, or such judgment taken, are fully paid in money and satisfied. The Company shall have the right to discount or transfer any of said pledge orders, and the title or right of possession in and to said machinery or materials shall pass thereby to the legal holder of such pledge orders.

"The said machinery or materials shall be and remain strictly personal property and retain its character as such, no matter whether on permanent foundation or in what manner affixed or attached to any building or structure, or what may be the consequence of its being disturbed on such foundation, building or structure, or for what purpose the machinery or materials may be used.

"Insurance.

"The Municipality shall receive the machinery or materials herein specified promptly and the Municipality shall promptly on arrival insure such machinery or materials against loss or damage by fire in the amount remaining unpaid to the Company, in such companies satisfactory to the Company, and will continue such insurance in force until the amount of such indebtedness to the Company is fully

paid, loss if any being made payable to the Company as its interest may appear. Said policies shall be delivered to the Company at its election. Should the Municipality fail to so do, the Company may obtain such insurance at the Municipality's expense. In case of loss or damage by fire, such loss or damage shall have the effect of immediately assigning said insurance to the Company, whether or not taken out for its benefit. The Municipality shall make good any loss to the company by reason of any damage to said machinery or materials caused by fire, carelessness or other injuries, it being understood, however, that funds for this purpose are limited to proceeds from insurance and receipts of the electric light plant.''

I. Defendants contend that plaintiffs' burden of taxation would not be increased by performance of the contract, and for that reason they are not authorized to maintain this suit. The plaintiffs are tax-paying citizens of the city. As such, they have an interest in the electric distribution system and white way system owned by the city prior to the execution of the contract under consideration. These systems are necessarily affected by the contract. Moreover, it is provided in the contract that the city must construct foundations for the machinery. We think the plaintiffs are authorized to maintain the suit. [Rutherford v. Taylor, 38 Mo. 315; Matthis v. Town of Cameron, 62 Mo. 504; Carson v. Sullivan, 284 Mo. 353, 223 S. W. 571; Castilo v. State Highway Comm., 279 S. W. 673; Civic League v. St. Louis, 223 S. W. 891; Bell et al. v. City of Fayette, 28 S. W. (2d) 356.]

II. Defendants next contend that the contract does not create an indebtedness in violation of Section 12, Article X, Constitution. The pertinent part of the section follows:

''No city . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting on such proposition, at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness; . . . And provided further, That any city . . . , incurring any indebtedness requiring the assent of the voters as aforesaid, shall before or at the time of doing so, provide for the collection of an annual tax sufficient to

pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for payment of the principal thereof, within twenty years from the time of contracting the same."

In other words, defendants contend that the word "indebted" in said section means a debt payable from funds raised, or to be raised, by taxation. They cite Bell et al. v. Fayette et al., 325 Mo. 75, 28 S. W. (2d) 356; State ex rel. v. Neosho, 101 S. W. (Mo.) 99, and many decisions of the courts of other jurisdictions. On the other hand, plaintiffs cite decisions of other jurisdictions tending to sustain the view that the word "indebted" as used is not limited to debts to be paid from funds raised by taxation. The provisions of the state constitutions with reference to indebtedness of cities are not identical. In many states there is no limit to the amount of indebtedness. In others there is no requirement for payment by taxation. In others there is no limit fixed at income and revenue provided, or to be provided, for the year. These differences discount the cited decisions of other jurisdictions as authorities on the question. We held in the Fayette and Neosho cases that the word "indebted" in said section means a debt payable from funds raised or to be raised by taxation. We are satisfied with the ruling on that question in those cases. However, having reached the constitutional limit of indebtedness, a city cannot create a debt to be paid directly or indirectly, in whole or in part, from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. This is not controverted by defendants. They state it as follows:

"The real explanation of the cases holding that obligations payable out of plant revenues do not constitute municipal indebtedness, lies in the circumstance that the obligations do not impair or impinge upon general municipal revenues, raised by taxation or other revenue measures. Obligations dischargeable solely out of a special fund, to the payment of which the general credit of the municipality is not pledged, are nevertheless debts of the city for the purpose of the constitutional limitation, *if that fund is the product of a tax levy.*"

We next consider the contract to determine the question of its validity. It is therein provided as follows:

"All obligations arising under the terms of this contract are not general obligations of the City of Harrisonville, Mo., but only special obligations payable from the net revenues of the electric light plant of The City of Harrisonville, Mo. . . .

"The Municipality agrees to adopt resolutions providing for the creation of a special fund into which all receipts for the product or service of said plant shall be deposited and to credit such fund at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes."

It will be noted that while the first paragraph provides that the obligations are not general but special and payable from the net revenues of the light plant, still, the second paragraph provides that the city shall "credit such funds at the regular established rates for all product or service of said plant used by the city or any department thereof for any and all public purposes." In other words, provision is made for the city to purchase from itself, at a profit, power for its water plant, lights for its streets and current for other purposes. The record shows the city has no funds available for such purposes. If it purchases its own current, funds for that purpose must come from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. In this situation the parties resorted to the subterfuge of fixing the rate the city must pay itself for current without in express terms requiring the city to use its own current. Defendants do not contend that the city will not use its own current to light its streets and for power to operate its water plant. It would be idle for them to do so. The city would not purchase current from others when it had current of its own for sale. Indeed, defendants concede that the electric plant of the city will furnish power for its water plant, and the evidence shows that the city contemplates using its own current to light its streets. Furthermore, the parties to the contract, in fixing $1193.82 as the amount to be paid by the city monthly for sixty months, must have taken into consideration the money the city would pay into the special fund (so-called) for power and light. It is evident from a consideration of the contract as a whole that it was the intention of both parties to require the city to pay into the special fund and thereby pay on the purchase price of the engines and equipment a sum of money equal to the cost of current used by the city at the "regular established rate." It is also evident that the parties knew this payment by the city must be from funds raised by taxation, or from a fund which must be replenished by funds raised by taxation. Therefore, they resorted to this subterfuge in an effort to evade the constitutional prohibition. The trick is so transparent that we do not wonder at the failure of defendants to undertake a defense of this provision of the contract. "Whenever courts see such attempts at concealment 'they brush away the cobweb varnish,' and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation of the law by means of the disguise under which its real character is masked." [Maxwell, Interp. Stat., 133, 134.]

The bar to the constitutional prohibition is clear, and we should not permit it to be evaded. The contract must be held invalid. The chancellor held it so for this reason and for other reasons. Consideration of the other reasons is unnecessary.

The judgment should be affirmed. It is so ordered. *Atwood, C.J.*, and *Frank* and *White, JJ.*, concur; *Ragland, J.*, concurs in the result; *Henwood* and *Ellison, JJ.*, not sitting.