STATE OF MISSOURI ex rel. CHARLES M. STRONG and BENNETT F. STRONG d/b/a CHARLES M. STRONG EQUIPMENT COMPANY, Relators-Respondents, v. A. R. CRIBB, Presiding Judge and President of the County Court of Macon County, Missouri, Respondent-Appellant, No. 43823—273 S. W. (2d) 246.

Court en Banc, November 8, 1954.

Rehearing Denied, December 13, 1954.

*Rendlen & Rendlen* for appellant.

*Edwards, Hess & Collins* for relators-respondents.

WESTHUES, C.—Relators instituted a mandamus proceeding to compel A. R. Cribb, Presiding Judge of the County Court of Macon County, Missouri, to sign a warrant in the sum of $4,494.75. The trial court ordered the writ to be issued and Cribb appealed.

The $4,494.75 was due under a contract dated December 8, 1952, the subject matter of which was road machinery. Relators contend the County Court leased the machinery for a period of three years, that is, for 1953, 1954, and 1955; that the amount due for each year was payable in advance: on December 15, 1952, $4,494.75, on December 15, 1953, $4,584.76, and on December 15, 1954, $5,347.27, for the ensuing years respectively. A warrant was ordered drawn for the first payment due in December, 1952. Two of the judges signed the order but the Presiding Judge, A. R. Cribb, refused to sign the order and also refused to sign the warrant. His defense was that the agreement was void under the provisions of the County Budget Laws, Title 6, Chapter 50, VAMS, and Sec. 26(a) of Article VI of the 1945 Constitution. Respondent Cribb contends in this court that the alleged "Lease Agreement" was in fact a sale and not a rental of the road equipment; that the payments were in excess of the budget for 1952 and also that the alleged "Lease Agreement" anticipated revenues for 1953 and 1954 and, therefore, the agreement was void and a violation of the Budget Laws and the Constitution.

Our jurisdiction of this appeal was questioned during the oral argument. We find that in the case of State ex rel. Ginger v. Palmer,

Mo., 198 S.W. (2d) 10, issues similar to those on this appeal were involved. That case was transferred to this court by the St. Louis Court of Appeals (194 S.W. (2d) 736) on the ground that the interpretation of the Budget Law was in issue. This court en banc assumed jurisdiction and decided the case on the merits. In the case now before us, we are called on to interpret various sections of the Budget Law and, therefore, the appeal was properly lodged in this court for the reason that the revenue laws of the state are directly concerned. In State ex rel. Martin v. Childress, 345 Mo. 495, 134 S.W. (2d) 136, l.c. 138 (2, 3), the court approved the following statement taken from State ex rel. Hadley v. Adkins, 221 Mo. 112, l.c. 118, 119 S.W. 1091, l.c. 1093: " 'that the term "revenue law" covers and includes laws relating to the disbursement of the revenue and its preservation, as well as provisions relating to the assessment, levy, and collection of it * * *.' " See also State ex rel. Pullum v. Consolidated School Dist. No. 5 of Stoddard County, 361 Mo. 114, 233 S.W. (2d) 702.

Appellant Cribb, in his brief, states his position as follows: "In this case the respondents are attempting to avoid or evade the County Budget Law, Ch. 50, Secs. 50.670-50.740 RS 1949, by an arrangement they choose to term a 'Lease Agreement'. We believe that this Court should not permit any such avoidance or evasion.

"Appellant submits that the 'Lease Agreement' provides for one or the other of two alternatives:

"First—It provides for the payment of $16,026.78 for certain equipment; or

"Second—It provides for the payment of County funds in 1953 and 1954.

"As we will point out herein, the *first* alternative makes the agreement void as the payment exceeds the 1952 budget, and the *second* alternative makes the agreement void as it anticipates County revenues for future years."

Romet Bradshaw, the County Clerk of Macon County, and the County Treasurer, H. B. Clarkson, were the principal witnesses. From their evidence and the county records under their control, we learn the following facts: The fiscal year of 1952 was commenced with a "carry-over" of $115,533.98. There were outstanding obligations so that the unencumbered balance was $55,471.95. The estimated revenue for 1952 was placed at $250,588.71. The estimated expenditures for 1952 were fixed at $250,588.71. We do not think it necessary to go into details as to the expenditures during the year 1952.. We deem it sufficient to show the financial standing at the end of the year. Leaving out of consideration the contract in question in this suit, there was a balance in the treasury of Macon County at the end of 1952 in the sum of $98,941.11. That was explained by the following examination of the witness, Romet Bradshaw:

"Q. Now, continue to leave that out. Was there a balance, and, if so, how much, in the treasury of Macon County, Missouri, made up of the 1952 revenues and the 1951 balance that was carried over? Is that this sum of $98,941.11 that you gave me?

"A. That would be the Treasurer's balance. That would be the Treasurer's balance as soon as he gets the Collector's turn-over.

"Q. Well, the Collector's turn-over included the months of November and December, did they not?

"A. That's right.

"Q. Which came in later, but were 1952 revenues?

"A. That's right.

"Q. Well, does this figure of $98,941.11 include the $39,152.00 of protested warrants?

"A. That does. They have been deducted. They have been paid before that figure is arrived at.

"Q. When this balance of $98,941.11 is reached, what other claims or obligations or orders of any kind incurred by Macon County in 1952 remain unpaid?

"A. There would be none. They would all be paid.

"BY THE COURT: (To Mr. Rendlen) Is that your understanding of it?

"BY MR. RENDLEN: Yes, sir.

"BY THE COURT: (To Mr. Hess) Is that your understanding of it?

"BY MR. HESS: Yes, sir, Judge, on the basis of Mr. Bradshaw's figures."

Further examination showed the following:

"Q. (By Mr. Rendlen) Now then, as I understand you, at the end of the year you had, the Treasurer had a balance in the Common Fund of some $29,000.00, and in Class 3 the sum of $6,000.00?

"A. Yes, sir.

"Q. Or a total of around $35,000.00?

"A. Yes, sir.

"Q. Now then, one further thing: You began the year 1952 with a carry-over of $115,533.98?

"A. Yes, sir.

"Q. And you ended the year of 1952 with a carry-over of $98,941.11?

"A. I believe that's right.

"Q. So that you spent $16,592.87 more than you received during 1952?

"A. Yes, sir."

It is our understanding from the evidence that the last question referring to the amount received during 1952 did not include the $55,471.95 of unencumbered balance on hand at the beginning of 1952. It is evident that the over-all expenditures for the year did not exceed

the income for 1952 within the meaning of Sec. 26(a) of Article VI, Missouri 1945 Constitution. That section reads as follows:

"Section 26(a). No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall .become indebted in an amount exceeding in any year the income and revenue provided for such year *plus any unencumbered balances from previous years,* except as otherwise provided in this constitution." (Emphasis ours)

Appellant Cribb, in his brief, attempts to demonstrate that the Budget Law was violated in that the road and bridge fund, which is Class 3 of Section 50.680, VAMS, was overdrawn or overspent. If the total amount ($14,426.78) agreed to be paid to Relator under the contract for the three years be charged against the amount of the budget of 1952 in Class 3, that budget item would be overdrawn. An exhibit in evidence showing the County's financial standing at the end of 1952 disclosed a balance of $12,154.83 in Class 3.

While Mr. Bradshaw, the County Clerk, was testifying and being examined as to whether the amount allotted to Class 3 had been overspent, the witness made the following statement:

"A. Well, Your Honor, may I answer it this way? I know certain bills were there, the amount of which I did not know. I say it this way in order to—well, I want to protect my budget, so to speak—up until this time all lease agreements, with the exception of one, to my knowledge, had been paid out of Class 6 for the year but we are now drawing against 3; therefore, I still contend that we didn't overdraw Class 3."

There is definite evidence that some items of expense generally charged to Class 3, the road and bridge fund, were paid out of Class 6 funds. From the cross-examination of the County Clerk, we have the following:

"Q. (By Mr. Hess) Mr. Bradshaw, with respect to Respondent's Exhibit 2 and the figures concerning the lease payments in February and March, 1953, in the amount of $16,930.72, when was that payment made, or those payments made?

"A. I believe the warrants were drawn the last week in January. I am not quite certain.

"Q. Some time in January of 1953?

"A. That's right.

"Q. From what were they paid?

"A. They were paid from 1952 revenue out of Class 6."

Was it a violation of the Budget Law to pay such items out of the fund in Class 6? We do not think so. That portion of Sec. 50.680, supra, designated Class 6, reads as follows:

"Class 6. After having provided for the five classes of expenses heretofore specified, the county court may expend any balance for any lawful purpose; provided, however, that the county court shall not

incur any expense under class six unless there is actually on hand in cash funds sufficient to pay all claims provided for in preceding classes together with any expense incurred under class six; provided, that if there be outstanding warrants constituting legal obligations such warrants shall first be paid before any expenditure is authorized under class six.''

It will be noted that the funds assigned to Class 6 may be expended with certain restrictions for "*any lawful purpose.*" (Emphasis ours) One of the restrictions imposed is that ''there is actually on hand in cash funds sufficient to pay all claims provided for in preceding classes together with any expense incurred under class six; * * *.'' In other words, the funds in Class 6 may not be depleted unless the funds in the other classes are sufficient to pay all claims contracted to be paid out of the funds in such classes. The intention of the Legislature, as evidenced by the provisions supra, established Class 6 somewhat as a guarantee that all claims in the preceding classes shall be paid. It is common knowledge that unforeseen events often occur which require expenditures in excess of the amount assigned to a certain class such as Class 3, the bridge and road fund. If the budget for such class is not sufficient to take care of the unforeseen expense, the county court may use money in Class 6, provided there is a sufficient sum in that class that is not subject to the restrictions mentioned in the statute. It is apparent that that was done in this case when it became evident that Class 3 expenditures might exceed the sum allocated to that class by the budget.

The object of the constitutional provision, Sec. 26(a) of Article VI, and the ''County Budget Laws,'' supra, is to compel counties and municipalities to operate on a cash basis. In other words, the governing body may not obligate the county or municipality in a sum in excess of the revenue provided for any one year. The sum available to be spent in any one year is the revenue provided for that year ''plus any unencumbered balances from previous years.'' Sec. 26(a), supra. We rule that the County Court of Macon County in 1952 did not, in the matter of expenditures, violate the provisions of the Budget Law.

We need not pass on the question of whether the so-called ''Lease Agreement'' was in fact a sale and not a rental of the road equipment mentioned in the contract. Granting for the sake of argument that it was a sale and not a rental, as appellant contends, there remained in the county treasury, at the end of 1952, a sum unencumbered sufficient in amount so that the County Court, constituting the governing body for the year 1952, could, if it saw fit, pay the entire amount due under the contract out of the unencumbered balance. Appellant says this court in the past has required ''strict compliance with the County budget law.'' In the case of Adair County v. Urban, Mo., 250 S.W. (2d) 493, l.c. 495 (2), cited by appellant, we cited a number of cases

which declared the law to be that a strict compliance with the Budget Law was required. We have followed that rule in deciding this case.

The only defense presented by the Presiding Judge, appellant Cribb, was that the signing of the warrant constituted a violation of the Budget Laws. The trial court ruled that the defense was without merit. We have found that the trial court was correct. Therefore, appellant as Presiding Judge of the County Court was required by law (Sec. 50.190, RSMo 1949, VAMS) to sign the warrant. The act of signing the warrant which had been ordered to be drawn by the County Court was a ministerial act on part of appellant as Presiding Judge and mandamus was the proper remedy. 55 C.J.S. 125, Sec. 72.

The judgment of the trial court issuing the peremptory writ of mandamus is hereby affirmed.

It is so ordered. *Leedy,* Acting C. J., *Hollingsworth, Ellison,* JJ., and *Anderson,* Special Judge, concur; *Hyde,* J., dissents; *Dalton,* J., not sitting.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the Court en Banc.

HYDE, J. (dissenting).—I respectfully dissent from the opinion adopted by the Court in this case. I am convinced that the transaction involved violates Sec. 26(a) of Article VI of the Constitution. If that is true, certainly respondent should not be compelled to sign the warrant.

The transaction is shown by the contract signed by two members of the County Court and the Order made by them which were as follows:

## "LEASE AGREEMENT

"This Lease Agreement is entered into this 8th day of December, 1952, by and between Strong Equipment Company, a partnership consisting of Charles M. Strong and Bennett F. Strong of Macon, Missouri, hereinafter known as party of the first part and The Macon County Court, State of Missouri, by A. R. Cribb, its Presiding Judge, and Robert E. Powell and Henry C. Carter, District Judges, hereinafter known as party of the second part. Party of the second part agrees to lease from party of the first part one TD 18A International crawler tractor serial number 28893, motor serial number 29619, with Bucyrus Erie hydraulic bulldozer serial number 97773, for a period of three years paying rental as follows.

"December 15, 1952, to December 15, 1953—One D7 Caterpillar tractor, 16 International tractor and loader, and Laplante Shoate Scraper and warrant for $4494.75 payable in advance.

"December 15, 1953, to December 15, 1954—Warrant for $4584.76 payable in advance.

"December 15, 1954, to December 15, 1955—Warrant for $5347.27 payable in advance.

"Party of the second part accepts and acknowledges receipt of the equipment and agrees to keep and maintain the same in good condition to insure it against loss by fire, theft, or other insurable hazards for the benefit of the party of the first part, its successors or assigns for the highest insurable value thereof. Party of the second part agrees to keep the machine in good repair at their own expense and in case of default in any rental payment to return the machine within 15 days to the party of the first part at its place of business in Macon, Missouri, in as good repair as they received it, natural wear excepted.

"Party of the second part agrees to run the machine in a good workmanlike manner and to hold party of the first part free from all claims and damages against any and all persons for any cause whatsoever, pertaining to the machine and its operation.

"Signed and sealed this 8th day of December, 1952.
Chas. M. Strong

| | |
|---|---|
| Partner | |
| Bennett F. Strong | ...................... |
| Partner | Presiding Judge |
| For Party of the First Part | ROBERT E. POWELL |
| Strong Equipment Company. | District Judge |
| | HENRY C. CARTER |
| | District Judge |
| | For Party of the Second |
| | Part Macon County Court." |

"COURT ORDER

"In the County Court of said County, on the 8th day of December, 1952, the following among other proceedings, were had, viz.:
IN RE: ORDER FOR WARRANT TO BE DRAWN ON CLASS 3 FOR PAYMENT PER LEASE AGREEMENT ON PURCHASE OF TD 18 INTERNATIONAL CRAWLER TRACTOR.

"Now on this day the court takes up the matter of the purchase of new road building equipment from the Chas. M. Strong Equipment Co., namely a TD 18 International crawler tractor serial number 28893, motor serial number 29619, with Bucyrus Erie hydraulic bulldozer serial number 97773. The purchase price to be handled as per lease agreement as follows:

"December 15, 1952, to December 15, 1953—One D7 Caterpillar tractor, 16 International tractor and loader, and Laplante [252] Shoate Scraper and warrant for $4494.75 payable in advance.

"December 15, 1953, to December 15, 1954—Warrant for $4584.76 payable in advance.

"December 15, 1954 to December 15, 1955—Warrant for $5347.27 payable in advance.

"The court agrees to the terms as set forth in the lease agreement and orders and directs the clerk of the court to draw a warrant on Class 3 payable to Chas. M. Strong Equipment Co., in the amount of $4494.75 to cover rental from Dec. 15, 1952 to December 15, 1953.

Signed, ........................:.........
Presiding Judge
Signed, ROBERT E. POWELL
Associate Judge
Signed, HENRY C. CARTER
Associate Judge.''

It will be noted that the agreement calls the transaction a lease and the order calls it a purchase. The testimony shows that relators would recover the full value of the machinery involved from the payments required to be made over the three year period, including the value of the old machinery owned by the county and required by the agreement to be transferred to relators. However, regardless of whether the transaction was a lease or a sale, it is my view that it was invalid and in violation of Sec. 26(a) because it created an indebtedness in one year and obligated the county to make payments on it of fixed amounts out of the revenue of future years.

Section 26(a) provides: "No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this Constitution."

Section 26(b) provides: "Any county, city, incorporated town or village, school district or other political corporation or subdivision of the state, by vote of two-thirds of the qualified electors thereof voting thereon, may become indebted in an amount not to exceed five per centum of the value of taxable tangible property therein as shown by the last completed assessment for state and county purposes."

The purpose of these provisions is to require county financial operations to be on an annual cash basis by limiting expenditures in each year to the amount of revenue which the taxes for that year would produce and by preventing a county from incurring indebtedness to be paid out of revenue to be derived in future years unless authorized by a two-thirds vote. (See Book v. Earl, 87 Mo. 246; Trask v. Livingston County, 210 Mo. 582, 109 S. W. 656, 37 L.R.A.,N.S., 1045; Hight v. City of Harrisonville, 328 Mo. 549, 41 S. W. (2d) 155; Hagler v. City of Salem, 333 Mo. 330, 62 S. W. (2d) 751; Hawkins v. Cox, 334 Mo. 640, 66 S. W. (2d) 539; Ebert v. Jackson County, (Mo. Sup.), 70 S. W. (2d) 918; Sager v. City of Stanberry, 336 Mo. 213, 78 S. W. (2d) 431; Missouri Toncan Culvert Co. v. Butler County, 352 Mo.

1184, 181 S. W. (2d) 506.) As said in the Trask case (210 Mo., l.c. 594) : "This provision of the Constitution permits the anticipation of the current revenues to the extent of the year's income in which the debt is contracted or created and prohibits the anticipation of the revenues of any future year." It was further stated therein (210 Mo., l.c. 600) : "While the county court may in any one year draw warrants, *after the revenue has been provided and the taxes levied* within the scope of the levy and income for such year, it is too plain for argument that the Constitution forbids the anticipation of the revenues of any subsequent years." (Our italics.) In short, any agreement to create a debt payable in any future year is invalid unless authorized by a two-thirds vote.

It makes no difference whatever that the debt made payable in a future year is a rental payment under a lease instead of an ██ installment of a purchase price. It was so held in Ebert v. Jackson County, supra, which involved a four year lease of a room to be used as a courtroom by a justice of the peace. There the rental was payable monthly but the lease obligated the county to pay it for the whole four year period. We said (70 S. W. (2d), l.c. 920) : "These payments were to be paid from the income and revenue of future years as well as from the income and revenue provided for the year the contract became effective. It was an unconditional promise made by the county on July 18, 1925, to pay the rent in advance on the first day of each month for four years. The payment of the rent was not contingent upon the occupancy of the room by the justice or on plaintiff's furnishing it to the county for that purpose. The contract was an effort to anticipate the income and revenue of the county for several years following the year the contract became effective. It created a debt within the meaning of said section of the Constitution, and is void." The decisive point was that an indebtedness for the full amount of all the installments, required by the lease to be paid in future years, was incurred at the time the lease contract was made; and that is likewise the situation in this case.

The debt created in this case in 1952, and contracted to be paid in each of the two succeeding years (1953 and 1954), was an unconditional promise to pay a fixed sum at a specified time in each of these future years. (See definition of debt in the Trask case, supra, 210 Mo., l.c. 595.) Not only was that true but it also was stated to be payable in advance; namely, in advance of the beginning of the stated annual rental period in each subsequent year. (The distinction between such an unconditional obligation and the contingent contract considered in Saleno v. City of Neosho, 127 Mo. 627, 30 S. W. 190, is discussed in the Trask case, 210 Mo., l.c. 595, and in the Ebert case, 70 S. W. (2d), l.c. 920.) Thus, the agreement in this case clearly created in one year unconditional obligations payable in future years and this violates the constitutional provisions prohibiting creation of

debts payable out of revenues of future years. The cases of Hight v. Harrisonville, Hagler v. Salem and Sager v. Stanberry, supra, hold that such a transaction can be enjoined in a suit by taxpayers.

It is argued that the contract herein involved lawfully could be made because the county had on hand in 1952 an unencumbered balance from previous years greater than the total amount of the debt contracted for at that time to be paid in 1952, 1953 and 1954; and it is admitted in the pleadings in this case that such an unencumbered balance existed in 1952. Because this unencumbered balance existed, I would agree that a contract to purchase the machinery to be paid in full in 1952, or even to lease it for three years to be paid for in advance during 1952 out of this unencumbered balance, would have been valid. However, that is not what was done. The idea was to eat the cake and have it too; to point to this unencumbered balance for the purpose of making the transaction appear legal *but not to use it to pay the indebtedness created.* The agreement was not to pay this indebtedness *during that year* out of this unencumbered balance from previous years or even to obligate this unencumbered balance for its payment. Instead, the agreement was just *to pay in the future years.* Not even the 1952 payment was to be made out of this unencumbered balance. There is not one word in the court's order about paying the obligations, created by the agreement herein involved, out of this unencumbered balance; instead it was ordered that the first payment was to be made out of current road and bridge funds. (A warrant on Class 3, see Sec. 50.680 RSMo. V.A.M.S.) Thus, so far as this order shows, this unencumbered balance was to be carried over to another year still unencumbered or used to pay some other obligations. Moreover, the evidence shows the county had at least two other installment lease agreements with payments to be made in February and March of each year aggregating $16,930.70 annually. This certainly indicates a practice of anticipating future revenues and also shows that the total future obligations of the county on a lease basis were much greater than those herein involved. It even indicates that the total of all obligations, required to be paid in annual installments, may have been in excess of the 1952 unencumbered balance on which relators rely to show the legality of the contract herein involved. Apparently, it was unencumbered because of the practice of making installment contracts. It was shown that budgeted road and bridge funds for 1952 were insufficient and that money from some other source would have to be used to make payment of all 1952 road and bridge obligations. (Class 3 warrants had been protested since September.) It was further shown that in 1952 the county's expenditures were $16,592.87 more than its receipts. Certainly the two deferred payments, required to be made on relators' contract in future years, were left to be paid out of revenues of those years because there was no other method provided for paying them shown by the court's order or otherwise.

■ To be entitled to the extraordinary remedy of mandamus, a party must show a clear legal right. (State ex rel. Phillip v. Public School Retirement System of the City of St. Louis, 364 Mo. 395, 262 S. W. (2d) 569 and cases cited.) I certainly do not think relators have made any such showing in this case. On the face of the contract and order, an unlawful anticipation of the revenue of future years is shown. Furthermore, it was at least left in doubt that the unencumbered balance, on which relators rely to show a lawful contract, would be used to pay the obligations created by their new lease agreement or any part thereof. Even disregarding the unconstitutional feature of the contract, I think respondent, as presiding judge, was justified in refusing to sign this warrant to pay out road and bridge funds on this contract because the record does show existing 1952 obligations against that fund greater than the amount available from road and bridge funds budgeted from taxes levied during the year 1952, and does not show that any proper provision had been made to take care of the excess. Certainly not at the time this suit was commenced on December 22, 1952. It was necessary to use funds from some other source before the end of the year to meet the obligations against that fund and to keep in compliance with the County Budget Law. (Secs. 50.670-50.740 RSMo. V.A.M.S.) Without a complete showing that applicable funds were available to be so used and that a sufficient amount was definitely provided and obligated to pay the entire debt created by relators' contract, relators could not show a clear legal right to compel respondent to sign this warrant against road and bridge funds. In any event, the burden was on them to show a legal contract and it is my view that this could not be done without showing a definite, unconditional application of the unencumbered balance, on which they rely, to the payment of the entire debt created by their contract. This they certainly did not do. Therefore, I would reverse and remand with directions to quash the writ and leave relators to their legal remedy of suing the county on the contract.