BOONE COUNTY COURT,
etc., Appellants,

v.

STATE of Missouri, Mel Carnahan,
Treasurer of the State of Missouri,
et al., Respondents.

No. 63576.

Supreme Court of Missouri,
En Banc.

April 6, 1982.

Rehearing Denied May 11, 1982.

322 ■

Kandice Johnson, Asst. Pros. Atty., Columbia, for appellants.

John Ashcroft, Atty. Gen., William F. Arnet, Asst. Atty. Gen., Jefferson City, for respondents.

HIGGINS, Judge.

The Boone County Court appeals from a summary judgment that art. X, § 21, Mo. Const. does not require a salary increase for second class county collectors, mandated by § 52.420, RSMo Supp.1981, to be paid from the state treasury. The question is whether the increase in salary constitutes an increased "activity" as that term is used in art. X, § 21, Mo.Const. If so, the state would be required to pay the amount of increase. Reversed to so require.

On November 4, 1980, the people of Missouri amended their Constitution, art. X, §§ 16 through 24 inclusive (the Hancock Amendment), to provide *inter alia* :

Section 21. *State support to local governments not to be reduced, additional activities and services not to be imposed without full state funding.* The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

Subsequently, Senate Bill 192, now known as § 52.420, RSMo Supp.1981, was signed by Christopher S. Bond, Governor of the State of Missouri; it repealed § 52.420, RSMo 1978. The new enactment increases the annual salary of collectors of second class counties by one hundred dollars; it is otherwise a rescript of § 52.420, RSMo 1978, and imposes no additional duties for those collectors to perform.

On March 9, 1981, the Boone County Court requested the Treasurer of the State of Missouri to disburse to Boone County, a second class county, one hundred dollars with which to pay the salary increase mandated by § 52.420, RSMo Supp.1981; the request was refused the following day. On May 1, 1981, William Frech, Richard Farmer, and Kay Roberts, filed a declaratory judgment action in their official capacity as duly elected judges of the Boone County

Court, and in their individual capacities as taxpayers and citizens of Boone County, Missouri. Their petition requested the trial court to declare that art. X, § 21 Mo.Const., requires the state to fund any increase in activity or services which the general assembly requires of a county beyond those required of the county as of the time of the adoption of the Hancock Amendment; that the salary increase for collectors of second class counties as mandated by § 52.420, RSMo Supp.1981, resulted in an increase in the activity of the Boone County Court; that the state was required to pay from its treasury the salary increase; and that the state wrongfully refused to remit any funds to pay for the salary increase. Respondents denied that the salary increase constituted an increased activity for Boone County to perform.

Upon motions for summary judgment by both parties, the trial court granted summary judgment in favor of respondents. The court entered a specific finding that the "increase of one hundred dollars in the salary of the collector of Boone County is not a new or additional activity or service within the meaning of section 21 of Article X of the Missouri Constitution, as amended." The trial court held that the state is not required to appropriate or disburse funds for the salary increase created by § 52.420, RSMo Supp.1981.

Stated anew, the issue is whether the State of Missouri or Boone County must bear the added expense of this one hundred dollar increase in the collector's annual salary. With the exception of this increase, the parties agree that the salaries of second class county collectors are paid from the county treasury.[1]

1. Section 50.330, RSMo 1978 provides:
    *Salaries of county officers—when paid*
    Any salary provided for a county officer, deputies and assistants, shall be paid in monthly installments on the first day of each month, by warrants drawn on the county treasury.
    The arrangement for compensation of county officers to be fixed by state statute but paid from the county treasury is not unique to the office of county collector. *See, e.g.,* clerks

(Chapter 51, RSMo 1978); assessors (Chapter 53, RSMo 1978); treasurers (Chapter 54, RSMo 1978); auditors (Chapter 55, RSMo 1978); prosecuting attorneys (Chapter 56, RSMo 1978); sheriffs (Chapter 57, RSMo 1978); coroners (Chapter 58, RSMo 1978); recorders of deeds (Chapter 59, RSMo 1978); surveyors (Chapter 60, RSMo 1978). A number of salary increases for county officials mandated by state statute have been expressly conditioned upon a ruling by this Court "stating that the

Appellant argues that the State of Missouri has financial responsibility for the salary increase because (1) the payment of the collector's salary is an activity conducted by Boone County at the mandate of the state, and (2) the salary increase in § 52.420, RSMo Supp.1981, is an increase in the level of that activity beyond pre-Hancock Amendment levels; that therefore, by the terms of § 21, the state must pay the one hundred dollar increase. Appellant also argues that its position is confirmed by reading the Hancock Amendment as a whole because the unmistakable intention and purpose of the amendment was to prevent increases in taxation without direct voter approval and prohibit state expansion of local responsibility without state funding.

Respondents argue that a salary raise alone does not constitute, under § 21, an increased activity for Boone County's government because it is not accompanied by an imposition of additional duties which the Boone County collector must perform and therefore does not increase his activity.

■■■ Rules applicable to constitutional construction are the same as those applied to statutory construction, except that the former are given a broader construction, due to their more permanent character. *State at the Information of Martin v. City of Independence,* 518 S.W.2d 63, 65 (Mo. 1974). In determining the meaning of a constitutional provision the court must first undertake to ascribe to the words the meaning which the people understood them to have when the provision was adopted.

*State at the Information of Danforth v. Cason,* 507 S.W.2d 405, 408 (Mo. banc 1973). The meaning conveyed to the voters is presumptively equated with the ordinary and usual meaning given thereto. *Id.* at 409. The ordinary, usual and commonly understood meaning is, in turn, derived from the dictionary. *Id., Accord, Concerned Parents v. Caruthersville School District,* 548 S.W.2d 554 (Mo. banc 1977); *State ex rel. Curators of the University of Missouri v. Neill,* 397 S.W.2d 666 (Mo. banc 1966); *Rathjen v. Reorganized School District R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516 (1955). The grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed. *State at the Information of Danforth v. Cason, supra; O'Malley v. Continental Life Insurance,* 335 Mo. 1115, 75 S.W.2d 837 (1934). To this extent the intent of the amendment's drafters is influential.[2] Finally, due regard is given to the primary objectives of the provision in issue as viewed in harmony with all related provisions, considered as a whole. *State at the Information of Martin v. City of Independence,* 518 S.W.2d at 65. By following these rules, the fundamental purpose of constitutional construction is accomplished, to give effect to the intent of the voters who adopted the amendment. *Rathjen v. Reorganized School District R–II of Shelby County, supra.*

"Activity" standing alone is a general word and its meaning in the present situa-

---

State of Missouri is not required under the provisions of sections 16 to 24 of art. X of the Missouri Constitution to pay increases in compensation granted to county officials by state statute when such increases in compensation are not granted because of the imposition of additional duties." *E.g.,* §§ 51.285, 52.325, 54.-243, 55.093, RSMo Supp.1981.

**2.** In a memorandum from the Taxpayers Survival Association (the organization of which Mr. Hancock is Chairman and which drafted the amendment) "an explanation of the drafters' intent in the formulation of this Amendment" was compiled. With regard to § 21, the memorandum states:

It was the drafters' intent to include all state-mandated cost increases in this provi-

sion, including but not limited to: changes in general law which increase local governmental cost, *i.e.,* increases in the state minimum wage law, changes in the civil and criminal statutes, *e.g.,* mandatory sentencing; federally encouraged changes in state law, *e.g.,* unemployment compensation; collective bargaining or compulsary [sic] arbitration mandates, land-use regulations, etc.

This comment is not inconsistent with the ruling made in this opinion; however, the interpretation of this constitutional amendment is not a question of how it was understood by its framers but how it was understood by the people adopting it. *Household Finance Corporation v. Shaffner,* 356 Mo. 808, 203 S.W.2d 734, 737 (1947).

tion cannot be determined without employment of all of the aforementioned rules.

■ Art. X, § 21 refers to "an increase in the level of any activity or service"[3]. "Activity" is defined in Webster's Third New International Dictionary (1965) as "natural or normal function or operation . . . an occupation, pursuit, or recreation in which a person is active . . . an organizational unit for performing a specific function; also its duties or function." By comparison "service" is defined as "the performance of work commanded or paid for by another . . . an act done for the benefit or at the command of another." *Id.* The word "any" as used in a constitutional provision is "all-comprehensive, and is equivalent to 'every'." *State ex rel. Randolph County v. Walden*, 357 Mo. 167, 206 S.W.2d 979, 983 (1947). The disjunctive word, "or", ordinarily indicates an alternative and "generally corresponds to the word 'either'." *Council Plaza Redevelopment Corporation v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969). Although usages of "service" and "activity" frequently overlap, it is illogical to view them as having the same meaning where, as here, both are used in the alternative. If these terms were intended to have the same meaning the use of only one of them would be necessary, and the other would be surplusage; included for no reason. Such a construction is not favored. *See Rathjen v. Reorganized School District R–II of Shelby County*, 284 S.W.2d at 523.

■ Read in the alternative as they are composed and broadly as required by the term "any", "service" refers to county governmental action performed for the benefit of its residents; "activity" refers to the general functioning and operation of county government in performing services. "Any activity" as applied to county functioning encompasses every increase in the level of operation in that government. To the extent that the county court is mandated to

pay the collector more, an increase in the level of governmental operation results and therefore the salary increase is "an increase in the level of any activity". Art. X, § 21, Mo.Const.

■ This construction is in accordance with the objectives of the Hancock amendment as clearly understood by the voters; to control and limit governmental revenue and expenditure increases. Art. X, § 16, states: "The state is prohibited from requiring any new or expanded activities by counties and other political subdivisions without full state financing, or from shifting the tax burden to counties and other political subdivision." In *Buchanan v. Kirkpatrick*, 615 S.W.2d 6 (Mo. banc 1981) it was stated that:

> [T]he central purpose of [the Hancock] Amendment . . . is to limit taxes by establishing tax and revenue limits and expenditure limits for the state and other political subdivision which may not be exceeded without voter approval. [The] Amendment . . . is popularly described as 'the tax and spending lid' amendment, words which also reflect its central purpose.

*Id.* at 13. That decision further noted that the official ballot title prepared by the attorney general stated that it "Prohibits state expansion of local responsibility without state funding . . . .". *Id.* The court may look to the title of an act when construing the section of the constitution to which it relates. *Rathjen v. Reorganized School District R–II of Shelby County*, 284 S.W.2d at 524. The purpose of the amendment in broad terms is to confine state revenues and expenditures, art. X, § 18, Mo.Const., to limit local government revenues in the form of taxes, licenses or fees, art. X, § 22, Mo.Const., to prevent the state from requiring local government to assume a greater proportion of currently shared financial responsibilities and to eliminate the state's power to mandate new or in-

---

**3.** As noted above, the state has never paid any portion of the second class county collector's salary. Therefore, the first sentence of art. X, § 21 is not involved, because the state is not reducing its "financed proportion of the cost of any existing activities or service required of the counties." *Id.*

creased levels of service or activity performed by local government without state funding. Art. X, § 21, Mo.Const. This amendment contains no limit on the level of spending by county or local governments. This is not necessary, however, because such a limit has long existed in art. VI, § 26(a), which states:

No county, city, incorporated town or village, school district or other political corporation or subdivision of the state shall become indebted in an amount exceeding in any year the income and revenue provided for such year plus any unencumbered balances from previous years, except as otherwise provided in this constitution.

See, e.g., State ex rel. Strong v. Cribb, 364 Mo. 1122, 273 S.W.2d 246 (1954).

Respondents' position equates "service" as work performed for another with "activity" as an occupation when they assert that no increased activity in the form of additional duties or labors are required of the county collector by § 52.420, RSMo Supp. 1981. This interpretation is not in accordance with the disjunctive connection of "activity or service". Also, this argument addresses the wrong question because the concern is increased activity required of the county rather than of the individual collector. Adoption of respondents' position would lead to the peculiar situation of applying the amendment to limit the state's formerly unlimited power to increase its own expenditures while allowing it to retain unlimited power to increase county expenditures via salary increases. The amendment has limited the counties' power to generate revenues to meet the requirements of art. VI, § 26(a). Considering this, art. X, § 21 serves to assure that county costs will not be raised by state government without attendant funding.

The people of Missouri made clear their intention to limit governmental taxing and spending and to prohibit expansion of local responsibility without state funding; the salary increase provided for in § 52.420, RSMo Supp.1981 is directed to be paid from state funds by art. X, § 21, Mo.Const.

Most counties of Missouri have their officers' salaries established by uniform law. Article VI, § 11 of Mo.Const. provides:

Section 11. Compensation of County Officers—uniform laws—statement of fees and salaries.—Except in counties which frame, adopt and amend a charter for their own government, the compensation of all county officers shall be prescribed by law uniform in operation in each class of counties. Every such officer shall file a sworn statement in detail, of fees collected and salaries paid to his necessary deputies or assistants, as provided by law.

■ The Hancock Amendment when proposed contained a list of constitutional provisions which purported to notify the voters what provisions were in "direct conflict" with the amendment. Buchanan v. Kirkpatrick, 615 S.W.2d at 15. Although art. VI, § 11 was not on this list, its omission does not mean that the latter was unaffected by the former. The previously unlimited authority of the state to set the salaries of county officers pursuant to art. VI, § 11, must be read in harmony with the Hancock Amendment. State at the Information of Martin v. City of Independence, 518 S.W.2d at 65. The power of the general assembly to increase the salary of certain county officials has been modified by the Hancock Amendment to the extent that any such increases now must be paid from the state treasury.

The judgment is reversed.

DONNELLY, C. J., and WELLIVER and MORGAN, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

RENDLEN and SEILER, JJ., dissent and concur in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge, dissenting.

I respectfully dissent. The circuit court's judgment should be affirmed because the legislature's power under the Missouri Constitution to set salaries of county officers

was not directly or indirectly affected by the so-called "Hancock Amendment", Mo. Const. art. X, §§ 16–24.

Article X, § 21 is the provision of the Hancock Amendment that Boone County contends requires the state to pay the increase in salary to the collector. An existing and continuing provision in our constitution mandates that the salaries of county officials are to be set by law—by the general assembly. Mo.Const. art. VI, § 11 provides as follows:

> Except in counties which frame, adopt and amend a charter for their own government, *the compensation of all county officers shall be prescribed by law* uniform in operation in each class of counties. Every such officer shall file a sworn statement in detail, of fees collected and salaries paid to his necessary deputies or assistants, as provided by law. (Emphasis added.)

The relevant parts of art. X, § 21 (Hancock) will be examined to see if the legislative power under art. VI, § 11 has been affected.

Art. X, § 21 (Hancock Amendment) provides:

> The state is hereby prohibited from reducing the state financed portion of the costs of any existing activity . . . .

As applied to this case, the state is not reducing the state financed portion of the cost of the collector's office, even if it is thought of as an activity, because the state never paid any part of the collector's salary anyway.

> . . . or service required of counties and other political subdivisions.

The statute increasing the collector's pay does not reduce the state financed portion of any service required of counties. The state never paid any part of the county salary.

> A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state

appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

The statute does not require any new activity or any activity by the collector's office or the county beyond that which was required of a collector prior to the passage of this statute raising the salary. Nor, in my opinion, is there any increase in the activity required of the county. This statute does not require any new *service* beyond that which is required by the previously existing statutes relating to the duties of a collector. The statute does not require any increase in the level of any activity or service performed by the collector or the county beyond that required by previously existing law. In fact, the statute does not change any service or activity to be performed by the collector or the county at all.

When art. X, § 21 is considered at face value, word by word, phrase by phrase, and as a whole, it is seen that there is no curtailment of the legislature's constitutional power to act pursuant to art. VI, § 11 in prescribing the compensation for county officers.

Article X (Hancock Amendment) did not repeal or even mention art. VI, § 11. Consequently, art. VI, § 11 remains as a viable part of our constitution. This is not to say that an amendment to the constitution could not reduce or curtail existing power of the general assembly under some other provision of the constitution. Clearly, the "Hancock Amendment" has done that with reference to the general assembly's power to require a county to perform specific services exceeding services required by law prior to the passage of the Hancock Amendment without state funding. The amendment should be viewed as a restriction on existing powers of the general assembly; and that restriction should, in my opinion, be given a narrow construction in order that the restriction on the power of the people acting through the general assembly will not be curtailed more than the Hancock Amendment specifically provides.

I do not suggest that the Hancock Amendment is easy of interpretation or ap-

plication in all respects; however, the amendment as proposed to the voters contained a notice and that notice undertook to state or predict what constitutional provisions were or may be changed, repealed, modified by implication, or may be construed to change, repeal, or to be modified by implication by the Hancock Amendment. That notice provided:

> You are advised that the proposed constitutional amendment changes, repeals, or modifies by implication, or may be construed to change, repeal, or modify by implication, in addition to the provisions of the Constitution which are specifically added, the following provisions of the Constitution of Missouri—Article II; Sections 1, 38(b), 46, 46(a), 47, 48, and 51 of Article III; Sections 15, 22, 23, 24, 28, and 30(a) of Article VI, Sections 18(c), 18(d), 19, 25, and 26(f) of Article VI; Sections 1(a) and 3(b) of Article IX; and Sections 1, 4(d), 10(b), 11(a), 11(f), and 12(a) of Article X.

*See Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 24 (Mo. banc 1981).

Article VI, § 11 is not mentioned in this notice. Although perhaps not conclusive, I am convinced that this is a very strong indication that this amendment was not intended to restrict, repeal, curtail, or modify the legislature's constitutional power specifically provided for in art. VI, § 11.

For these reasons, I believe that the legislative power under art. VI, § 11 and pursuant to which the pay raise statute in question was enacted has not been modified or repealed by the amendment to art. X (Hancock Amendment).

The principal opinion uses what it perceives as the overall *general* purpose of the amendment to deny to the general assembly a *specific* power granted by Mo.Const. art. VI, § 11, even though the specific power is not even mentioned in the amendment. In fact, as noted, the "Notice to Voters" specifically mentions art. VI, §§ 18(c), 18(d), 19, 25, and 26(f), but does not suggest any impairment, limitation, or condition on art. VI, § 11, which is the constitutional *requirement* that the general assembly set the salaries of county officers.

The committee that advised about and prepared the Hancock Amendment, according to the memorandum referred to in the principal opinion, was composed of, among others, seven state senators and four state representatives, some of whom are lawyers, and at least two other lawyers. It is not reasonable to think that if these people wanted to condition the power of the general assembly to set or increase salaries of county officers, upon the willingness of the general assembly to appropriate the money for the increase out of state general revenues, that they would not have known how to say it specifically and in plain English. The reason that a limiting or modifying provision cannot be found in the amendment is, in my opinion, because it isn't there.

In my opinion, the circuit court ruled correctly, and I would affirm the judgment; consequently, I dissent.